# Joe H. Dawson *et al.*

*v.*

# E. D. Vickery.

*Filed at Mt. Vernon June 19, 1894.*

1. Fraud—*setting aside deed obtained by fraud.* Where the consideration of a deed for land is the sale of a stallion, which was represented by the seller to be about the age of eleven years and a sure foal-getter, when, in truth, such horse was more than nineteen years old and entirely worthless as a foal-getter, and of no value for any purpose, and the purchaser, on learning that the horse was worthless, notified the seller that the horse was subject to his order, it was held, that a court of equity would set aside the deed for the fraud of the grantee, and that the deed was without consideration.

2. Same—*damages recoverable on rescinding sale for fraud.* The buyer of chattel property which proves to be worthless has not the right to keep it an indefinite time after discovering the fraud practiced on him, and recover from the seller the expense of taking care of it. For such a breach of a contract the buyer must act with reasonable promptness, and can only recover such damages as he thereby sustains.

3. A decree found that the sale of a stallion was effected by false and fraudulent representations of the seller as to the age and qualities of the animal, which was entirely worthless, and that the buyer, immediately on learning that the horse was worthless, notified the seller that the horse was at the purchaser's stable subject to the seller's order, and that the latter refused to take it away, and the buyer kept such horse from May 10, 1889, to July 10, 1890, and that the care and expense of keeping the animal for such period was reasonably worth $222.50, which the seller was decreed to pay the buyer: *Held,* that the decree as to the damages required to be paid by the seller was erroneous, and not sustained by the facts found therein.

4. Cross-bill — *whether germane to the original bill.* On bill to foreclose a mortgage, in which a subsequent purchaser of the premises is made a party defendant, a cross-bill by the mortgagor, seeking to have his conveyance to the defendant set aside on the ground of fraud and failure of consideration, is proper, for the purpose of determining who has the right of redemption.

5. While it is true that a cross-bill must relate to the subject matter of the original bill, it is not essential that the facts showing the relief sought by one defendant against another should appear from the original bill.

6. LACHES—*must be pleaded.* A defendant can not assign for error the failure of the court to dismiss a bill on the ground of *laches,* when no such defense has been set up in the court below by plea or answer.

7. CHANCERY—*preserving the evidence.* Where no certificate of evidence and no bill of exceptions are preserved in the record of a chancery suit, this court will be confined to the finding of facts in the decree alone.

WRIT OF ERROR to the Circuit Court of Clay county; the Hon. WILLIAM C. JONES, Judge, presiding.

Mr. J. R. EDEN, and Mr. W. G. COCHRAN, for the plaintiffs in error:

A cross-bill is a bill by a defendant in a chancery suit against the plaintiff in the same suit, or against other defendants in the same suit, touching the matter in question in the original bill, and is usually brought either to obtain a discovery of facts in aid of the defense to the original bill, or to obtain fuller relief to all the parties touching the matter of the original bill. *Kennedy* v. *Kennedy,* 66 Ill. 190; *Gage* v. *Mayer,* 117 id. 632; *Thompson* v. *Shoemaker,* 68 id. 256.

By dealing with the property as his own, after discovering the alleged fraud, Vickery is precluded from rescinding the contract. Bishop on Contracts, sec. 683; *Jennings* v. *Gage,* 13 Ill. 610.

Mr. B. D. MONROE, for the defendant in error:

One who has perfected his right to rescind a fraudulent contract can not lose it by merely taking care of the property received, unless what he does is done with the intent to confirm the contract.

Where subsequent acts are relied upon as a defense, in a case where fraud is clearly established, it is said the acts must stand upon the clearest evidence, and must evince a purpose to waive or forgive the fraud, and must amount to a clear election not to rescind.

The jurisdiction of courts of equity to rescind contracts for fraud is well established. Pomeroy's Eq. Jur. secs. 110, 112; *Henshaw* v. *Bryant,* 4 Scam. 97; *Wing* v. *Sherrer,* 77 Ill. 200.

Mr. JUSTICE BAKER delivered the opinion of the Court:

To the March term, 1890, of the circuit court of Clay county, J. M. and J. R. Tanner filed their bill in chancery against E. D. Vickery, and Kate Vickery, his wife, to foreclose a mortgage on the south-west quarter of the south-east quarter of section 12, township 4, north, range 7, east of the third principal meridian, alleged to have been executed by said Vickery and wife on the 12th day of March, 1888, to secure the payment of a promissory note of that date for $225. Joe H. Dawson and Joe Britton, plaintiffs in error, were also made defendants, with the allegation that they claimed some interest in the land, which, if any, was subject to the mortgage of complainants. They answered the bill, setting up that E. D. Vickery and wife, on the 9th of April, 1889, had conveyed the lands to them by warranty deed, which was duly recorded in the recorder's office of Clay county two days thereafter; that the mortgage mentioned in complainants' bill also conveyed an eighty-acre tract of land, which the complainants, with full knowledge of the rights of plaintiffs in error in said forty acres, had released, and alleging that the said eighty-acre tract should be first exhausted in the satisfaction of complainants' mortgage debt, and the said forty acres released therefrom. They also filed a cross-bill against complainants in the original bill and E. D. Vickery and wife, alleging the facts set up in the answer, and praying the same relief. To this cross-bill a demurrer was sustained, and the complainants therein elected to stand by the cross-bill.

E. D. Vickery answered the original bill, admitting the facts therein alleged, and filed a cross-bill against plaintiffs in error, setting up that he had conveyed the land to them in exchange for a stallion, upon their false and fraudulent representations

that the stallion was a sure foal-getter and not over eleven years old, when, in truth, he was over twenty years old, and impotent; that immediately upon learning these facts he had notified them of the same, and also notified them that the horse was subject to their order, but they had refused to take him; that they well knew of the worthless character of the horse when they made such representations to him; and that the horse, by reason of his age and impotency, was wholly worthless. It also alleged that the keeping of the horse was reasonably worth three dollars per week, etc. The prayer of this cross-bill was, that the said deed from the complainants therein, to said Dawson and Britton, be set aside and canceled, and for an accounting as to damages, etc.

Plaintiffs in error answered, admitting that the sale of a stallion was the consideration for the conveyance of the land to them, but denying that he was not as represented by them, and averring that he was a valuable horse, etc.

Upon the hearing, the court entered a decree of foreclosure on the original bill as therein prayed, dismissed the cross-bill of plaintiffs in error, but found the cross-bill of said Vickery to be true, finding and setting forth in the decree the following facts: "That on the 9th day of April, A. D. 1889, said E. D. Vickery and wife, Kate, conveyed, by warranty deed, to Dawson and Britton, defendants in said cross-bill, said south-west quarter of south-east quarter of section 12, aforesaid, which deed was properly acknowledged, and recorded in volume 31 of deed records, at page 360, in the recorder's office of said county, the express consideration of said deed being $800, but the real consideration was the sale and delivery by said Dawson and Britton, to said Vickery, of one Clydesdale stallion, named 'Border Chieftain, No. 87,' of the American Stud Book, valued by said parties at the sum of $800. And the court further finds, that defendants Dawson and Britton represented to said Vickery that said horse was about eleven years old, etc., and a sure foal-getter; that said Vickery, rely-

26—150 ILL.

ing upon said representations, and believing them to be true, executed and delivered said deed to said Dawson and Britton for said premises in payment for said horse, when, in truth and in fact, said horse was more than nineteen years old, and was entirely worthless as a doer and foal-getter, and of no value for any purpose; that the said Dawson and Britton made the said representations knowing them to be false at the time, and for the purpose of misleading said Vickery, and cheating him out of his said real estate by reason of said false and fraudulent representations, as aforesaid, and that said deed by Vickery and wife, having been made and delivered to said Dawson and Britton upon such false and fraudulent representations, is without consideration, and ought to be canceled on the record and the title to said premises vested in Vickery, subject to said mortgage of Tanner Bros. And the court further finds, that said Vickery, immediately on learning that said horse was worthless for stud purposes, notified said Dawson and Britton of such fact, and that said horse was at his stable subject to their order, and that said Dawson and Britton refused and failed to take said horse away or to cancel said deed; that said Vickery kept said horse from the 10th day of May, 1889, until the 10th day of July, 1890, when he died; that the care and expense of keeping said horse for said period is reasonably worth $222.50." It was then ordered and decreed that said deed be set aside and canceled, and the court rendered a judgment in favor of said E. D. Vickery upon his cross-bill, and against Joe H. Dawson and Joe Britton, for $222.50 damages, and awarded execution therefor.

Dawson and Britton alone prosecute this writ of error, to which complainants in the original bill are not made parties. The only questions, therefore, which can be raised here, are such as arise upon the cross-bill of Vickery, and the answer thereto of plaintiffs in error, and those questions are, did the circuit court err in setting aside said deed and in rendering said judgment for damages.

It is first contended that the cross-bill of Vickery was not germane to the original bill, and therefore no relief could properly be granted under it. The object of this cross-bill was to have determined who had the equity of redemption in the mortgaged premises described in the original bill. It may be true that the complainants in the original bill had no interest in that question, but it does not follow that the cross-bill was not germane to the original bill. (*Chicago Artesian Well Co. v. Connecticut Mutual Life Ins. Co. et al.* 57 Ill. 424; *Hurd et al. v. Case,* 32 id. 45.) The equity of redemption being a question pertinent to the relief sought by the original bill, and these parties to the cross-bill being proper parties and interested in that question, we are unable to see why the controversy between them was not the proper subject matter of a cross-bill. While it is true that a cross-bill must relate to the subject matter of the original bill, it is not essential that the facts showing the relief sought by one defendant against another should appear from the original bill. *Robins v. Swain,* 68 Ill. 197.

Counsel for plaintiffs in error insist in their argument that the cross-bill should have been dismissed on the ground of the *laches* of the complainant therein. A sufficient answer to this contention is, no such defense was set up in the court below, by plea or answer.

It is also contended that the decree was not authorized by the proofs. In passing upon this point we are confined to the findings in the decree alone, there being no certificate of evidence or bill of exceptions in the record. The evidence was heard in open court. It will need no argument to show that upon the finding of facts in the decree above set forth, no other result could have been reached than that announced by the circuit court, in so far as it sets aside the deed in question. If, as there found, the deed was obtained by the false and fraudulent representations set forth, it would be a travesty upon justice for a court of equity to refuse to declare it

null and void. If the facts therein recited are accepted as true, as they must be, the deed was obtained by willful misrepresentation and fraud, and wholly without consideration. It is found by the decree that the representations as to the age and qualities of the horse were not only false, but known to be so by plaintiffs in error, and that upon the discovery of the fraud by Vickery, and an offer on his part to return the property, they refused to accept it or to reconvey the land which they had so fraudulently obtained. We are at a loss to perceive what more could be required of the buyer of chattel property than was done by Vickery in this case, to give him a standing in a court of equity. On the record presented to us we entertain no doubt as to the correctness of the decree setting aside the deed.

On the other branch of the decree we think the law is with the plaintiffs in error. The jurisdiction of a court of equity to adjust damages between parties in a case like that set up in the cross-bill of defendant in error could only be maintained upon the ground that, having taken jurisdiction for the purpose of determining the validity of the title to the land, it would settle all the rights of the parties growing out of the transaction. Even conceding that the jurisdiction can be sustained on that theory, it must be admitted that only such damages could properly be allowed as could have been recovered in an action at law on the facts alleged. No one will contend that the buyer of chattel property which proves to be worthless has a right to keep it an indefinite time after discovering the fraud, and recover from the seller the expense of taking care of it. For such a breach of contract he must act with reasonable promptness, and can only recover such damages as he sustains by so doing. The only facts alleged in the bill upon which to base this money judgment are, "that on the 15th of April he wrote defendants the facts, and desired them to come and take the horse away, and on the 16th defendant Dawson wrote refusing to take back the horse; that since

then the horse has been kept by your complainant, and that it is reasonably worth $3.50 per week to keep said horse;" and the prayer as to that branch of the case is, that "an account may be taken of the amount of loss sustained by your orator on account of the failure of the horse to do stud service, and for feed, etc.; that judgment be rendered in favor of your orator for such sum so found due, and that execution issue for the same as upon a judgment at law." No account was taken, and the only fact found by the decree is, that it was reasonably worth $3.50 per week from, etc. We do not think the allegations or proofs, as shown by the decree, sufficient to sustain the judgment. The decree is, therefore, in that respect erroneous.

The decree of the circuit court will be modified, by setting aside so much thereof as awards judgment and execution in favor of Vickery against the plaintiffs in error for $222.50 damages. In all other respects it will be affirmed. And it is ordered that each party pay his own costs in this court.

*Decree affirmed in part and in part reversed.*