H. T. HOLLAND, Jr., Plaintiff in Error,

v.

Ainslie PERRAULT and Lewis Perrault, as individuals and as partners d/b/a Perrault Brothers, Defendants in Error.

No. 37424.

Supreme Court of Oklahoma.

June 4, 1957.

Rehearing Denied July 2, 1957.

Robert W. Raynolds, Jack Hays, of Gable, Gotwals & Hays, Tulsa, for plaintiff in error.

Wheeler & Wheeler, Tulsa, for defendants in error.

BLACKBIRD, Justice.

For several years, the defendants in error, Ainslee Perrault and Lewis Perrault, d/b/a Perrault Bros., have operated a manufacturing plant at Sand Springs, Oklahoma. In 1950, plaintiff in error and one P. Madigliani owned a majority of the stock in the Oklahoma Glass Fiber Corp., hereinafter referred to merely as "Og", or as the "Og Corporation", which manufactured glass fiber and products made therefrom, including one commonly referred to as "pipe wrap." Plaintiff in error was also in the construction business, under the name of Holland Construction Company, to which, among others, Og was

indebted in the sum of $42,319.01, in addition to owing Holland, individually, the sum of $12,581.40.

On December 29, 1950, Perrault Brothers purchased all of Holland's stock in Og and 25% of Madigliani's; and entered into separate agreements with them to do certain things. Upon acquiring said stock, the Perrault Brothers became officers and directors of Og, and by the terms of the oral agreement entered into that day between Og and Holland, Og would execute a promissory note to him, due July 1, 1951, for the $12,581.40 said corporation owed him, and execute another such note to Holland Construction Company, payable in December, 1951, for the indebtedness Og owed said company. By another provision of said agreement, the Perrault Brothers were to cause Og to employ Holland. This oral agreement was fulfilled when Og, by its new President, Lewis Perrault, executed a written agreement containing, among others, provisions for the fulfillment of its terms. The part of the written agreement, with reference to Og's employment of Holland, provided that it would pay him, beginning July 1, 1951, $15,000 per year for a period of twenty years for "engineering and other related services" and that Holland would "not undertake any similar employment or engage in any similar business" during said period. The Og corporation paid Holland the $15,000 for each of the first two years of the specified 20-year period, and when, during the third year of said period, it defaulted in said payment, Holland, as plaintiff, instituted, in the District Court of Tulsa County, said Court's Cause No. 84453, naming as defendants, the Perrault Brothers, both as individuals and as partners doing business as Perrault Brothers, (as they appear herein) and a corporation referred to as Perrault Bros., Inc.

In one cause of action, Holland alleged, in substance, that said defendants fraudulently induced him to enter into the above-described ·contract, and, by that means, deprived him of his Og stock to his actual damage in the sum of $270,000. In another cause of action, he sought the same sum (which is identical to the unpaid balance he would have earned @ $15,000 per year as an employee of Og under said contract) as damages for defendants' alleged interference with the performance of said contract.

At a pre-trial conference, and a preliminary hearing, preceding the trial of said cause, the trial judge concluded, in substance, that these two alleged causes of action were inconsistent in that plaintiff's recovery, if any, on the first, for being deprived of his stock in the Og Corporation, by being fraudulently induced, through the medium of the above-described contract, to sell it to the Perrault Bros., had to be grounded on the theory that the contract was one for the sale, or transfer, of stock; while his second cause of action for being deprived, through defendants' wrongful interference with the performance of said contract, of $15,000 per year salary for 18 of the 20 years prescribed therein, had to be grounded on the theory that the contract was one of employment, rather than for the sale of corporate stock. On the basis of this conclusion, and of his announced view that plaintiff's counsel, by oral statements he had made at the pre-trial conference, had committed plaintiff to the position that the contract was one for the sale of stock, the trial judge ordered the allegations, concerning the second cause of action, stricken from his second amended petition. When later, at a hearing upon a motion by plaintiff to reinstate said allegations in said pleading, his counsel, by an alternative motion, in effect acceded to the judge's aforesaid view, by requesting permission to dismiss, without prejudice, the action as to said second cause, said judge granted said request.

After the case was tried on what was then said plaintiff's only alleged cause of action, viz., defendants' alleged fraudulent inducement of him to enter into the contract, and the trial court directed a verdict for defendants thereon, and entered judg-

ment for them in accord with such verdict, we affirmed said judgment. See Holland v. Perrault Bros., Inc., Okl., 311 P.2d 795. In said appeal, we did not regard as reversible error, the method, referred to above, by which plaintiff's second alleged cause of action was prevented from trial in that action. However, after the issues as to that alleged cause of action were removed from that action by the aforementioned dismissal, plaintiff made it the basis for a new action he thereafter instituted in the same court, against the same defendants, except the corporate one, Perrault Bros., Inc. That case is the only one directly involved in this appeal.

In his petition in this new action, plaintiff in error, Holland, hereinafter referred to as plaintiff, apparently attempted to charge that, by their acts and conduct, the defendants in error, hereinafter referred to as defendants, caused the Og Corporation to become so financially distressed that it was unable to continue the performance, and thus caused the breach, of the aforesaid contract to pay the $15,000 per year for the 18 years remaining of the 20-year period described therein. For reasons which will hereinafter appear, we deem it unnecessary to further describe plaintiff's petition at this point. Among the affirmative defenses defendants pleaded in their answer to said petition, and based upon what occurred in Cause No. 84453, were those of estoppel and res judicata. In support of these defenses, they attached as exhibits (referred to therein) the second amended petition in said cause, together with a transcript of the proceedings at the aforementioned pre-trial conference and of the trial judge's remarks at the time he directed the verdict for defendants in that case, hereinbefore referred to.

In his reply to defendant's answer, plaintiff included a general denial, and, among other things, specifically denied, in substance, that the issues in this case had been decided in Cause No. 84453, and that any occurrences therein, or facts there proved, estopped him from maintaining this new action, or constituted an election of remedies.

Thereafter, defendants filed a motion for judgment on the pleadings which was sustained by the trial court. From said ruling and judgment, plaintiff has perfected the present appeal.

The issues joined by the briefs filed herein, all pertain to the general one of: What effect, if any, the things that occurred in the previous action (Cause No. 84453, supra) have upon the question of the correctness of the trial court's judgment in this case? Both parties seem to agree that defendants' motion for judgment on the pleadings was sustained on the theory that plaintiff was barred from maintaining the present action either because of the position he took in that case, or because of some determination by the court therein, or both.

Plaintiff in error maintains, among other things, that said determinations were not res judicata of his cause of action in this case; and that the principle he refers to as "estoppel by judgment", does not apply because his alleged cause of action in this case, for wrongful interference with the performance of a contract is quite different from the one for fraudulent inducement to enter into said contract, which was the only alleged cause of action tried, or that could have been tried, in Cause No. 84453, supra, after said action's dismissal as to his alleged cause for wrongful interference. In addition to taking issue with plaintiff's counsel on the matters of "res judicata" and "estoppel by judgment", defendants interject an additional issue that might be loosely termed "estoppel by conduct", with which we will deal first. To constitute this kind of estoppel, they rely on the "election", which plaintiff, before the introduction of any evidence in Cause No. 84453, was, at first, virtually compelled, by the expressed views and order of the trial judge (as hereinbefore indicated) to make between considering the contract involved as one for the sale or transfer of stock, or considering it as a contract of employment.

Defense counsel claims that, contrary to plaintiff counsel's initial attempt in that case to treat it as both a contract for the sale of Og stock and a contract for plaintiff's employment by Og, said single contract could not be both—that it had to be one or the other—that after his said election to proceed against defendants in said cause for fraudulently inducing him to enter into said contract—as a contract for the sale of stock—plaintiff could not advance what they call the "inconsistent" position, or theory, in the present case, that the contract was one of employment.

■ We do not deem it necessary to go into the question of whether or not the contract could conceivably have a dual character and be both a contract of employment and a contract for the sale of stock. Nor do we think it necessary to denominate the statements of plaintiff's counsel (to which defendants refer) either an insignificant expression or conclusion, about a matter of law, or a binding admission of fact. In this connection, notice in re Assessment of Alleged Omitted Property, 177 Okl. 74, 58 P.2d 134, 138; 31 C. J.S. Estoppel § 117, Notes 37 and 38, § 121, Notes 61–63, 75. Suffice it to say, that in view of the fact that plaintiff, in Cause No. 84453, supra, was not successful in sustaining, on the premise that the contract was one for the sale of stock, the cause of action he therein prosecuted, and defendants do not appear to be prejudiced by his adopting a different characterization of said contract in the present case, the necessary elements of equitable estoppel are not here present. Such success by the party claimed to be estopped and such detriment by the party asserting such claim, have long been recognized as essential for application of the doctrine by courts generally and by this one in particular. In State ex rel. Com'rs of Land Office v. Keller, Okl., 264 P.2d 742, 748, we said:

"This court, in Johnson v. Gibson, 93 Okl. 194, 220 P. 47, 49, quoted with approval from Territory v. Cooper, 11 Okl. 699, 69 P. 813, wherein it is said:

" 'Where one voluntarily assumes a certain position in a legal proceeding, and *succeeds* in maintaining that position, he will not thereafter, because his interests have changed, be permitted to assume a contrary position, to the prejudice of a party who acquiesced in the position formerly taken by him.' " (Emphasis ours.)

See also Maxfield v. Maxfield, Okl., 258 P.2d 915, 919; Colvert Ice Cream & Dairy Products Co. v. Citrus Products Co., 179 Okl. 285, 65 P.2d 455; 31 C.J.S. Estoppel § 117, supra; 19 Am.Jur., Estoppel, § 73.

■ Nor do we think that the judgment in Cause No. 84453 constitutes any sound basis for defendants' plea of res judicata and estoppel by judgment. Defense counsel attempt to support these pleas by showing that the facts alleged in plaintiff's second amended petition in that case are substantially the same as those alleged in his petition in this case (the only difference being in the conclusions of law set forth therein), and, by setting out in their brief the remarks of the trial judge preliminary to his sustaining their motion for a directed verdict therein. They cite the rule that a judgment in a case is conclusive of each issue therein that *might have been* determined thereby, as well as those that were actually determined; but this rule applies only to issues that were submitted for determination. When it is remembered that, in Cause No. 84453, supra, all of the allegations of plaintiff's second amended petition therein with reference to the second cause of action originally alleged, were ordered stricken, it is obvious that no issue relating solely to defendants' alleged interference with Og's performance of its contract with plaintiff, was submitted for determination in that case.

Nor do we think the remarks of the trial judge, above referred to, show that he made any attempt to decide them. We have carefully examined these statements and

find none of them that are properly pertinent to any cause of action, except the one upon which that case went to trial, namely: Defendants' alleged fraudulent inducement of plaintiff to enter into the contract with Og. It is true that, with reference to plaintiff's particular claim, that, by such inducement, the Perrault Brothers merely tried to get the know-how and materials to use in their own Sand Springs plant, the trial judge quoted a contractual letter from them, addressed to and "accepted" by Og on October 30, 1950, and said judge opined that "this instrument" gave the Perraults everything that plaintiff complained they were trying to get by the alleged fraudulently induced contract, the full context of his remarks shows that he was referring to "pipe wrap for their PB Lami-Pipe; * * * licenses, * * * patents, the know-how, so to speak, * * engineering, * * * advice, * * * working designs, * * * drawings", etc. The judge then went on to say:

> "So, this Court is not impressed with the position that the Perraults bought the plant a few months thereafter in order to get the know-how and to get to use the production over at the Sand Springs plant when *they already had all of those rights* by virtue of this October 30th contract." (Emphasis ours.)

In his remarks, the judge further went on to demonstrate that the Perrault Brothers had done everything their preliminary agreement with plaintiff had specified should be done, and concluded that such circumstances, together with the fact that plaintiff, himself, was the one who had suggested that Perraults purchase all of his stock, showed no more than that the Perraults had entered into the transaction in good faith; and were insufficient proof of fraud. It goes without saying, however, that one may be entirely in good faith when he procures the execution of a contract, and then subsequently, decide to, and set about, trying to procure its breach or prevent its performance. And the latter comprises the gist of the cause of action plaintiff sought to maintain by the allegation in his petition in the present case, of certain acts of defendants, not shown in Cause No. 84453, supra. The substance of some of these allegations were that the defendants appropriated to their own use and benefit, or that of the partnership known as Perrault Bros., unfilled orders of the Og Corporation; that they used Og's facilities in their own enterprise, to Og's loss and detriment; that they marketed Og's "entire production" through Perrault Bros., Inc., and other companies controlled by them for their own personal profit and Og's loss. We mention only a few of such alleged facts, by way of demonstrating that they were never dealt with, or adjudicated, in Cause No. 84453, supra.

Since this appeal was presented to this court on the sole issue of whether or not that case is a bar to the maintenance of this action, and, apparently, the trial court, upon the hearing of defendant's motion for judgment on the pleadings, considered no other issue, we herein decide no other. We therefore merely hold that nothing herein shown to have occurred in Cause No. 84453, supra, constitutes a bar to plaintiff's maintenance of this action. On the basis of this determination, the judgment of the trial court is hereby reversed and this cause is remanded to said court for further proceedings.